IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JONNIE L. WHITTLE,

      Plaintiff,

vs.                                                                 1:13-cv-100-MP-GRJ

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying, in part, Plaintiff's applications for disability insurance benefits and supplemental security income benefits. (Doc. 1.)  The Commissioner has answered (Doc. 9), and both parties have filed briefs outlining their respective positions.  (Docs. 14 and 17.)  Upon due consideration of the complaint and answer, and for the reasons discussed below, the undersigned recommends that the Commissioner's decision should be affirmed.        .

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on June 28, 2010, alleging disability since February 20, 2006 [1] due to back problems, arthritis and an affective mood disorder.  (R. 63.)   His applications were denied initially, and upon reconsideration.  (R. 66, 70, 75 &

---

[1] The alleged onset date changed. In Plaintiff's application for SSI and DBI Plaintiff alleged an onset date of February 20, 2005, but in Plaintiff's Memorandum of law, he states that the date should have been February 20, 2006, the date of his accident.  However, during the hearing before the ALJ, Plaintiff's attorney amended the onset date to July 21, 2008. (R. 36.)

77.)  A video hearing was held before an Administrative Law Judge (ALJ) on February 13, 2012, and in a decision dated March 29, 2012 the ALJ found that Plaintiff was disabled as of April 1, 2010, but denied Plaintiff's claim of disability prior to April 1, 2010. (R. 20, 27, 33.)  The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision.  (R. 5-10.)  On May 17, 2013, Plaintiff filed the instant appeal to this Court.  (Doc. 1.)  On appeal, Plaintiff raises one issue. Plaintiff contends that the ALJ erred in concluding that Plaintiff was not disabled prior to April 1, 2010.[2]

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[3]  Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[4]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as

---

[2] Plaintiff's memorandum of law describes the issue as: Was the ALJ's determination arbitrary, capricious, and an abuse of discretion, and contrary to Plaintiff's constitutional right to fundamental fairness.  At its core, however, the challenge is to the determination that Plaintiff was not disabled prior to April 2010.  Plaintiff has not challenged the ALJ's determination of his RFC or the determination that Plaintiff was disabled as of April 1, 2010.

[3] *See* 42 U.S.C. § 405(g) (2000).

[4] *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord, Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[5] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[6] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[7]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[8]  The impairment must be severe, making a claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[9]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[10]  The burden then temporarily shifts to the

---

[5] *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

[6] *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[7] *Keeton v. Dep't Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

[8] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505(a) (2012) (All further references to 20 C.F.R. will be to the 2012 version unless otherwise specified.).

[9] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[10] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[11]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[12]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[13]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[14]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national

---

[11] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[12] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[13] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[14] Walker, 826 F.2d at 1003.

economy that the claimant can perform.[15]  Such independent evidence may be

introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive

means of introducing such evidence.[16]  Only after the Commissioner meets this burden

does the burden shift back to the claimant to show that he or she is not capable of

performing the "other work" as set forth by the Commissioner.

Age is a vocational factor considered by the Commissioner in determining if a

claimant is disabled.[17]  The rules and Grids take into consideration that advancing age

increasingly limits a persons ability to adjust to other work.[18] Therefore, as a claimant

ages, the likelihood of being found disabled increases.[19]  The Commissioner, however,

may not apply the age categories mechanically in a borderline situation, and may apply

an older age category if the claimant is a few weeks or months away from an older age

category.[20]

### III. SUMMARY OF THE RECORD

#### A. Plaintiff's Background and Medical Record

On July 21, 2008, Plaintiff was 47 years old.  Two years earlier, on February 20,

2006, Plaintiff was a passenger in a work related car accident.  As a result of the

---

[15] Wolfe, 86 F.3d at 1077-78.

[16] *See id*.

[17] 20 C.F.R. § 424.1563(a).

[18] See 20 C.F.R. Pt. 404, subp. P, Appx .2.

[19] 20 C.F.R. § 424.1563(a).

[20] 20 C.F.R. § 424.1563(b).

*Case No. 1:13-cv-100-MP-GRJ*

accident, Plaintiff suffered a right patellar fracture, which was surgically repaired on February 25, 2006. (R. 241 & 386.) In February 2007, Plaintiff had additional surgery, this time to remove the hardware previously placed in his knee. During the surgery, the physician found that Plaintiff's knee showed severe arthritis. (R. 377-379.)   Following his surgery Plaintiff was told that he would eventually need knee replacement surgery. (R. 377.)

Beginning in June 2006, Plaintiff started seeing Dr. Stephen Goll, an orthopaedic surgeon at Orlando Orthopaedic Center, for back pain related to his car accident. (R. 240.) During the 17 months that Plaintiff saw Dr. Goll, Dr. Goll's comments reflected his opinion that Plaintiff was not improving.  On Plaintiff's first visit, Dr. Goll suggested physical therapy and placed light work restrictions on Plaintiff.  In January 2007, Dr. Goll mentioned surgery, and by April 2007 he was of the opinion that Plaintiff's condition would not improve without surgery, and he had taken Plaintiff off of work duty. Throughout the rest of 2007, Dr. Goll's opinion remained the same – Plaintiff was off work duty and needed surgery to improve. (R. 240-262.)  Plaintiff's workers compensation insurance refused to pay for the back surgery.

Although Plaintiff's application for SSI states that he has not worked since 2006, in the hearing before the ALJ, (R. 230) Plaintiff testified that in 2008 he worked at a Burger King for five months, six hours a day. (R. 49, 50.)  On July 21, 2008, Plaintiff fell at work and went to the emergency room.  In October of the same year, Plaintiff fell again while mopping. (R. 343-352.) Plaintiff has not worked since then.

Plaintiff's medical history between 2008 and 2010 includes records from Dr. Eftin Adhami, a consulting examiner who saw Plaintiff on October 11, 2008 and October 11, 2010. (R. 334, 365.)  In 2008, Dr. Adhami found that Plaintiff had no signs of lumbar paravertebral muscle spasms and there were no abnormalities to explain his numbness in his fingers. (R. 24, 334.)

### B. ALJ's Decision

The ALJ determined that Plaintiff: 1) had not engaged in substantial gainful activity since the alleged onset date;[21] 2) had three severe impairments -- disorders of the right knee, disorders of the spine, and a history of asthma, none of which meets or equals the Listings; and 3) had the RFC to perform the full range of sedentary work. (R. 22, 23.)

In reaching these conclusions, the ALJ did not fully credit the opinions of any of the consulting examiners.  In fact, the ALJ determined that Plaintiff's RFC was more limited than what those examiners found. (R. 24-25, 367-374, 408-415.) The ALJ stated that although Plaintiff was able to perform sedentary work he was limited to: lifting no more than 10 pounds; pushing or pulling only with his left side; only occasionally climbing ropes or stairs, balance, stoop, kneel, crouch or crawl; never climbing ladders, ropes and scaffolds; using an assistive device for walking and standing; and no exposure to machinery, heights, extreme temperatures, or pulmonary irritants. (R. 23.)

---

[21]The alleged onset date in the opinion is listed as February 2005, but as stated above, the hearing transcript states that it should be July 21, 2008. (R. 36)

*Case No. 1:13-cv-100-MP-GRJ*

To establish this RFC, the ALJ relied primarily on Plaintiff's medical records, including the MRI and X-ray of Plaintiff's knee and back (R. 24, 317-320, 387.), as well as Plaintiff's testimony at the hearing. In her decision, the ALJ stated that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functioning capacity assessment." (R. 24)

After finding Plaintiff's RFC, the ALJ looked at the Grids to determine Plaintiff's disability status.  Given Plaintiff's RFC of sedentary work, his education and the transferability of his skills, the Grids directed the conclusion that Plaintiff, once he was "closely approaching advanced age," was disabled.[22]   Because the Grids directed this conclusion *before* consideration of Plaintiff's additional limitations, the ALJ determined that Plaintiff was disabled at that point in time. Therefore, ALJ did not ask the VE a hypothetical that included Plaintiff's other limitations.[23]

When the ALJ looked to the Grids to determine if Plaintiff was disabled while he was a younger person, the Grids directed a conclusion that Plaintiff was *not* disabled.[24] However, because the ALJ found that Plaintiff's RFC was limited by non-exertional factors, the ALJ appropriately did not rely on the Grids in making her determination.

---

[22] 20 CFR Pt. 404, Subp. P, Appx. 2, § 201.14.

[23] Plaintiff's non exertional limitations, including environmental hazards, would normally exclude the use of the Rules.  However, because his exertional limits alone directed a conclusion that he is disabled, there was no need to question the VE about the effect of those limits as well.

[24] 20 CFR Pt. 404, Subp. P, Appx. 2, § 201.21.

*Case No. 1:13-cv-100-MP-GRJ*

The ALJ also questioned a VE to see if jobs existed in the national economy for someone with Plaintiff's vocational profile, RFC, and additional limitations. (R. 26, 52.) At the hearing, the VE testified that for a younger individual with Plaintiff's RFC, vocational profile and other limitations, there were jobs in the national economy that Plaintiff would be able to perform. (R. 26, 53.)

Following the VE's testimony, the ALJ found that Plaintiff was not disabled while he was a younger person, but that he was disabled once he became "closely approaching advanced age." (R. 26-27.) The ALJ concluded that Plaintiff's date of disability was six months prior to the date he became "closely approaching advanced age."[25]

## IV. ANALYSIS

In determining that Plaintiff was not disabled prior to April of 2010, the ALJ properly applied the law and there is substantial evidence to support the determination.

In evaluating the RFC, the ALJ first looked at the records of Plaintiff's underlying medical impairments -- the objective evidence of his knee and back injuries. These records include the reports from his 2006 injury and surgeries, his MRI and his X-ray. The records clearly demonstrate that the Plaintiff had medical impairments, including advanced osteoarthritis and chondrocalcinosis of the right knee (R. 387.), and mulitlevel spondylotic changes to the cervical spine and moderate central canal stenosis at the C 4-5 vertebrae. (R. 305-307.) The ALJ then determined that these medical impairments

---

[25] Plaintiff turned 50, the age at which someone is considered 'closely approaching advanced age,' on October 10, 2010.  The ALJ set the date of disability approximately 6 months prior to his 50th birthday. (R. 26.)

could reasonably be expected to produce his symptoms of pain and a limit his ability to perform his former jobs.

Next, the ALJ evaluated the intensity, persistence and limiting effects of the Plaintiff's impairments.  As Plaintiff testified at the hearing, he was able to treat his pain with over the counter medicine, he was able to participate in activities of daily living (cleaning, bathing, cooking) and he was able to drive, but he also fell somewhat regularly. (R. 37-48.)  He also testified that during 2008 he worked a 6 hours day, with regular breaks for sitting. (R. 50).  As a result, the ALJ only partially credited Plaintiff's claims as to the intensity and persistence of his impairments.

When questioning the VE about the availability of jobs for someone in Plaintiff's position, the ALJ's hypothetical question to the VE included all of the Plaintiff's limitations and his vocational profile.  In response to the hypothetical question, the VE named three jobs that an individual with Plaintiff's vocational profile, an RFC of sedentary activities only, and other limitations, could perform. (R. 53.)[26]

Additionally, contrary to Plaintiff's argument, the use of April 1, 2010 as Plaintiff's onset of disability date, was not an arbitrary and capricious application of the rules.  The disability date selected by the ALJ was six months prior to the date Plaintiff turned 50. As the rules make clear, once an individual becomes closely approaching advanced

---

[26] Plaintiff's counsel asked if the VE would be able to identify jobs if the individual also required up to seven breaks per day, for as long as five minutes per break. The VE testified that an individual with that additional limitation would have a problem with employment. (R. 54.)  However, given that Plaintiff is already limited to sedentary work, there is nothing in the record that suggests the need to include this additional limitation in Plaintiff's RFC, and Plaintiff has not challenged the RFC.

age, age becomes a factor which significantly limits vocational adaptability.[27]  It is not surprising, then, that Plaintiff's change in age would create a change in his status from not disabled to disabled.  The rules specifically state that if a claimant is within a few days to a few months of reaching an older age category and using the older category would result in a determination or decision that someone is disabled, the Commissioner will consider using the older age category.[28]  On July 21, 2008, Plaintiff was more than 2 years from being closely approaching advanced age.[29] To apply the closely approaching advanced age category to Plaintiff when he was 47, without any further evidence of his inability to adjust to new work, would be a significant and improper expansion of the rule.

In sum, Plaintiff's argument makes no sense. The ALJ found that the Plaintiff was disabled from a date six months before he reached the age of 50 by relying upon the Grids. Notably, there is no challenge in this case to the ALJ's finding of disability *after* this date. The only challenge is the ALJ's finding that the Plaintiff was not disabled *before* then. The problem with Plaintiff's position is that the ALJ correctly relied upon the testimony of a VE in making this determination – and expressly did not rely upon the Grids – because the Plaintiff's RFC included non-exertional impairments. The ALJ is required to utilize a VE where the claimant's RFC includes non-exertional

---

[27] 20 C.F.R. Pt. 404, Subp. P, Appx. 2, § 201.00(c).

[28] 20 C.F.R. § 404.1563(b).

[29] Plaintiff could have presented evidence of his inability to adapt to new work environments, even at a younger age, but Plaintiff did not.

*Case No. 1:13-cv-100-MP-GRJ*

impairments. Arguably, the ALJ could have used testimony from a VE for the period of time after Plaintiff was within six months of closely advancing age but that decision has no bearing on the outcome in this case because Plaintiff was found to be disabled once he got close to 50 years of age. Plaintiff obviously is not challenging that finding in his favor.

Simply put, Plaintiff's argument that the ALJ mechanically applied the Grids has nothing to do with the ALJ's determination – based upon the testimony of a VE – that Plaintiff, as a younger person, was not disabled because there are jobs in significant numbers available in the national economy which an individual with Plaintiff's RFC could perform. Therefore, the ALJ did not err in determining that Plaintiff was not disabled during the period of time he was considered a younger individual.

## V. CONCLUSION

There was substantial evidence supporting the ALJ's determination of Plaintiff's RFC.  Given the ALJ's reliance on the VE's testimony, Plaintiff's RFC, his other vocational factors, and the rules, the ALJ's determination that Plaintiff was not disabled prior to April 1, 2010, is supported by substantial evidence and was a proper application of the law.

In light of the foregoing, it is respectfully **RECOMMENDED** that the Commissioner's decision should be **AFFIRMED**. The Clerk should be instructed to enter final judgment in favor of the Commissioner and close the file.

**DONE AND ORDERED** this 4th  day of August 2014.

*s / Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations withing 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections withing 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**